## HOUSTON EAST & WEST TEXAS RAILWAY COMPANY V. MARY CHARWAINE.

### Decided December 11, 1902.

**1.—Res Adjudicata—Injury to Land—Obstruction of Sewer.**

Where the only ground of recovery submitted to the jury was the negligence of the defendant in permitting a sewer to become choked with rubbish so that it failed to carry off the water, thus causing it to accumulate and at times to overflow plaintiff's land,—the sewer having been constructed long after a former suit for similar damages had been disposed of,—the court properly refused to instruct a verdict for the defendant for all claims for damages for permanent injury to the property on the ground that they had been finally adjudicated in such former suit.

**2.—Damages for Overflowing Land—Pleading and Evidence.**

Where the petition alleged that by reason of the overflow of plaintiff's property the premises had become filthy and unhealthy and "almost uninhabitable," evidence was admissible to show the "inconvenience" of living upon the premises as an element of damages in the case.

**3.—Market Value—Personal Property.**

Where plaintiff testified that she knew the market value of the personal property destroyed by the overflow, and that she knew it from the price she had paid for the property, this did not disqualify her from testifying to such value, in the absence of a showing that her only knowledge of such market value was from what she had paid for the property.

**4.—Evidence of Value—Immaterial Error.**

The improper admission of evidence as to the value of the property which could not possibly have injured the appellant is not reversible error.

**5.—Parties—Injury to Land—Wife's Equitable Title—Stale Demand.**

Where a husband purchased land in his own name with funds of his wife, inherited from her father's estate, and after his death the wife, who was in possession, and had been since the purchase by the husband, sued to recover damages caused by overflowing the land, the heirs of the husband were not necessary parties to the suit, nor was the wife's equitable title a stale demand.

**6.—Evidence—Expenses of Sickness—Physician's Bill.**

Where a physician who gave medical attention to plaintiff's family for the sickness alleged to have been caused by the overflow testified that his services were worth $150, this was sufficient evidence of the reasonableness of his bill to authorize its submission to the jury as an element of damage.

Error from the District Court of Harris County. Tried below before Hon. Wm. H. Wilson.

*Baker, Botts, Baker & Lovett* and *J. S. McEachin,* for plaintiff in error.

*Burke & Griggs,* for defendant in error.

PLEASANTS, ASSOCIATE JUSTICE.—Defendant in error brought this suit on the 7th day of February, 1899, against the plaintiff in error and the city of Houston jointly, to recover damages to property owned by defendant in error in the city of Houston. The damages claimed are alleged to have been caused by the negligent construction and maintenance by the railway company of a sewer constructed and maintained along the street adjoining plaintiff's property and over which said company operates its railway, and by the negligence of the city of Houston in the opening and grading of certain streets in the city of Houston in the vicinity of plaintiff's property, thereby changing the natural flow of the surface water and concentrating it in the street near plaintiff's home and upon plaintiff's premises. The allegations of the petition as to the negligence of the defendants and the damages caused thereby are as follows:

"That plaintiff is the owner in fee of lot 9, block 6, Ritchie's addition, near the corner of William and Sterrett streets, which is the home of plaintiff. That some time prior to the first day of March, 1897, the Houston East & West Texas Railway Company constructed

a sewer from the corner of William and Sterrett streets down along and within the confines of a natural watercourse,´ for the purpose of building thereover its tracks; that the natural watercourse always theretofore had been a natural drainway for the large area of land in the vicinity of plaintiff's home and including the above property, and carried off all of the surplus and surface waters that came upon plaintiff's said property and of the surrounding property; that in constructing the sewer the railway company made and constructed gates or service ways at the entrance thereof at the corneer of William and Sterrett streets for the purpose of permitting the water to enter said sewer; that for a long time the said defendant kept the sluiceways free from rubbish and trash, but that on and after the 1st day of March, 1897, the defendant company failed and neglected to care for, or give any attention whatever to, said sluiceways, and because thereof the same became clogged with rubbish at every rainfall, and would not permit the water to flow through the sewer, and said waters then and there so gathered, back upon and stand over and upon plaintiff's said premises to the depth of two or three feet, and so remain at times for the space of forty hours; that such has occurred during the last two years prior to the filing of this petition very frequently and at nearly every rainfall, and that the water so standing has cast sediment and refuse thereon and has killed the flowers, fruit and vegetables, and caused fences, walks and other wooden structures to decay, and has caused the premises to become filthy and unhealthy, and has superinduced sickness in plaintiff's family, and has permanently deranged and damaged the health of plaintiff and her family, all to plaintiff's damage in the sum of $2500; that on or about January 1, 1898, the said defendant company made and constructed an additional sewer and aqueduct, beginning at or near its depot, about 700 feet southwest from and leading up to said sluiceways formerly constructed at the mouth of said sewer at the corner of said William and Sterrett streets; that the additional sewer was intended to and did divert the water from its former course, and causes the same to be thrown and deposited in the vicinity of plaintiff's property, thereby adding to and augmenting the flow of water which gathers at rainy periods at said place, and which is unable to escape through the said sluiceways for the reason stated, to wit, inefficient construction thereof, and the negligence of the defendant in failing to keep the same clear of rubbish, trash and flotsam; that the water so conducted by said latter sewer, running from defendant's said depot, added to and augmented the said waters so gathered upon said plaintiff's premises, and caused said water seeking an outlet through said sluiceways to longer remain upon and cover more deeply plaintiff's said property; that on, after and since the said 1st day of March, 1897, the defendant, the city of Houston, by reason of its opening up of Providence, Conti, and other streets, and the grading and paving of McKee and Liberty streets, thereby changed the natural flow of the surface waters in, along and about the vicinity of said streets, and concentrated said waters

in and upon William street, at and near the home of plaintiff, thereby increasing the amount of such surface water as previously gathered in and around said premises, rendering plaintiff's said home almost uninhabitable. Plaintiff alleges that the city of Houston has assumed charge and control of said sewer, and that the defendant now, and ever since it assumed such control, allowed drift and flotsam to choke up and close the floodgates and openings in said sewer, thereby preventing the waters which gather in and around upon plaintiff's premises from the sources aforesaid to escape, and thereby causing the same to stand upon the plaintiff's premises, to her great hurt and injury; that said defendant, under its regular system of drainage and through the street commissioner, has graded, dug ditches, filled in and along Sterrett, Providence, Conti and William streets in such a way as to change the flow of water from its natural course, and caused the same to flow toward and concentrate in and upon plaintiff's said premises; that said property has been rendered almost wholly useless for residence purposes. The frequent deposits of filth and slime, refuse and dirt, give rise to nauseous stenches and foul odors, superinducing illness and disease in plaintiff's family, causing plaintiff to expend large amounts of money for physicians' services and medicine, to wit, the sum of $500; that said property has been rendered almost useless for residence purposes, and wholly valueless and unsalable for any purpose, to plaintiff's damage in the sum of $1500; that said foul odors have materially affected the condition of plaintiff's health and of her family, to plaintiff's damage in the sum of $1000. That by reason of said overflows the fruits, vegetables, flowers and shrubbery that were upon said premises, with vines, ornamental trees, etc., that were growing and in a healthy condition on January 1, 1897, and at other times thereafter, have been ruined and reduced to utter decay, and that all the flowers, fruits, vegetables, shrubbery, vines, trees, etc., placed upon said property since the 1st day of March, 1897, together with all the wooden structures and improvements thereon, have been ruined and caused to decay by reason of the frequent inundations, as before mentioned, to plaintiff's further damage in the sum of $169."

The defendant railway company answered by general demurrer, general denial, and specially pleaded a judgment in favor of William James against appellant for damages to the same lots for the same cause, which had been satisfied; the said Mary Charwaine being the widow of the said James. Defendant further answered by pleading the statute of limitations of two years in bar of the right to recover for all damages accruing more than two years prior to the filing of the suit.

The city of Houston pleaded an ordinance granting the railway company a right of way over certain streets, by which it was alleged the railway company had contracted to keep the sewer clear of rubbish. This ordinance provides that, "Should said company avail itself of this grant of right of way, it shall construct and keep in good repair all

necessary switches, drains, culverts and street crossings." The city prayed for judgment over against the railway.

A trial by jury resulted in a verdict for the plaintiff against appellant for the sum of $180, and against the city of Houston for the sum of $120. From this judgment the railway company alone prosecutes this writ of error.

There is evidence in the record to sustain the finding of the jury that since the 7th day of February, 1897, the railway company negligently allowed the mouth of its sewer on the street adjacent to plaintiff's property to become clogged or choked with rubbish so as to obstruct the flow of water, and that thereby plaintiff's property has been overflowed at various times causing the injuries complained of in her petition, and damaging plaintiff in the amount found by the jury.

The trial court properly refused to instruct the jury at the request of the railway company to return a verdict for said company upon all claims for damages for permanent injury to plaintiff's property on the ground that all such claims had been finally adjudicated and settled in the former suit for damages to said property brought by the deceased husband of the plaintiff. The only ground of recovery against the railway company submitted to the jury in this case was the negligence of said company in permitting said sewer to become choked with rubbish so that it failed to carry off the water which accumulated on the street adjoining plaintiff's property, and thereby caused said property to be overflowed. It is manifest that the damages to plaintiff's property caused by this act of negligence was not and could not have been recovered in a suit brought nearly twenty years before the negligent act complained of was committed. The petition does not seek to recover any damages which were or could have been recovered in the former suit, and the issue of res adjudicata did not arise by reason of the former judgment pleaded and proven by the railway company, and that issue was properly ignored by the court in his charge to the jury. The petition does allege the insufficient construction of the sewer as one of the causes of the injury to the property, but this was not submitted to the jury as one of the grounds of recovery, and the evidence shows that the alleged insufficient sewer was a brick sewer, constructed long after the former suit had been disposed of, and that prior to the construction of said sewer the wooden sewer maintained by the railway company was sufficient to protect plaintiff's property from overflow. Railway v. Seymour, 63 Texas, 345; Green v. Railway, 79 Texas, 604; Railway v. Haskell, 4 Texas Civ. App., 550.

The petition alleges that by reason of the overflow of plaintiff's property said premises had become filthy and unhealthy * * * and "almost uninhabitable." Under these allegations, we think the "inconvenience" of living upon such premises was an element of damage which might properly be submitted to the jury, and the objection to the charge which submitted to the jury, with other elements of damages

claimed by plaintiff, damages for "inconvenience," if any, caused by such overflow, should not be sustained.

It would serve no useful purpose to discuss categorically or in detail the various assignments which complain of errors in the charge of the court and of the refusal of the court to give special instructions requested by the plaintiff in error. It is sufficient to say that in our opinion none of these assignments should be sustained. The charge of the court fully and fairly presented to the jury all of the issues raised by the pleadings and evidence, and the special charges requested by the plaintiff in error, in so far as they contain a correct statement of the law applicable to facts in the case, were included in the charge given by the court, and should not have been repeated.

No judgment was rendered in favor of the city of Houston over against the railway company for the amount adjudged against said city in favor of the plaintiff. It is therefore unnecessary for us to determine whether the paragraph of the court's charge authorizing such judgment in favor of the city should have been given. If the giving of such instruction was erroneous, the error was manifestly harmless, as evidenced by the verdict and judgment.

There is no merit in the assignment which complains of the ruling of the trial court in admitting the testimony of plaintiff and the witnesses Harrell and Moore as to the value of the personal property destroyed by the overflow and as to the difference in value of plaintiff's property before and since the time of the alleged overflows. The plaintiff, who testified in her own behalf, was asked what was the market value of the personal property claimed to have been destroyed. This question was objected to on the ground that the witness was not shown to be qualified to testify as to the value of the property. She then stated that she knew the market value because she had bought the property about that time, and knew its value from the price paid. Upon this statement her testimony was admitted. The bill of exception to this testimony does not show that any further questions were asked the witness testing her knowledge as to the market value of the property. The witness having stated that she knew the market value of the property, the further statement that she knew it from the price she had paid for it would not disqualify her to testify as to such value in the absence of a showing that her only knowledge of the value of the property was from what she had paid for it.

The witness Harrell testified that there was little or no difference in value of plaintiff's property on February 7, 1897, and its value at the time of the trial, but that it was worth a little more. The witness Moore testified that there had been a general increase in the value of property throughout the city of Houston since February, 1897, of 20 per cent. Conceding for the sake of argument that this testimony was inadmissible, it could not possibly have injured the plaintiff in error, and its admission would not authorize a reversal of the judgment of the court below.

The plaintiff, over the objection of the defendant, introduced in evidence a deed from M. M. McKee conveying the property described in the petition to her deceased husband, William James, and testified that her husband purchased said property with funds inherited by her from her father's estate. After this evidence was admitted defendant moved the court to abate the suit because the heirs of William James were not parties thereto, and this motion being overruled, requested the court to instruct the jury to disregard the testimony of plaintiff that said property was purchased with her separate funds, because plaintiff's right to assert an equitable title to said property was a stale demand. This charge was refused. The trial court committed no error in his rulings in respect to any of these matters. The evidence shows that plaintiff has been in the possession and enjoyment of said property ever since its purchase, and her right to assert her equitable title thereto against the heirs of her husband is not a stale demand.

The case of Railway v. Stockton, 15 Texas Civil Appeals, 145, 38 Southwestern Reporter, 647, cited by plaintiff in error on the proposition that the motion to abate the suit should have been granted, does not sustain such proposition. In that case the plaintiff sued to recover for injury to land alleged in the petition to have been his property. He not only failed to show any title in himself, but testified on the trial that he did not own the land, that it belonged to his mother and his wife, and that he was in possession only as their agent. Upon these facts no right of recovery was shown in the plaintiff, and the defendant was clearly entitled to a judgment.

Dr. Parker, the physician who gave medical attention to plaintiff's family during the summer of 1897, testified that his services were worth $150. This was sufficient evidence of the reasonableness of his bill to authorize the court to submit it to the jury as an element of damage.

We are of opinion that the record discloses no reversible error, and that the judgment of the court below should be affirmed, and it is so ordered.

*Affirmed.*